UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  3:18-CR-00024-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Galveston, Texas |
| | ) | |
| JOHN DAVID KNOWLTON, | ) | Thursday, June 13, 2019 |
| | ) | |
| Defendant. | ) | (3:29 p.m. to 4:50 p.m.) |


PRETRIAL CONFERENCE

BEFORE THE HONORABLE GEORGE C. HANKS, JR.,
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Plaintiff:              ZAHRA J. FENELON, ESQ.
                           U.S. Attorney's Office
                           1000 Louisiana St., Suite 2300
                           Houston, TX 77002


For Defendant:             PHILIP G. GALLAGHER, ESQ.
                           Federal Public Defender's Office
                           440 Louisiana St., Suite 1350
                           Houston, TX 77002


Court Recorder [ECRO]:     Jessica Villarreal

Case Manager:              Susan Gram

Transcriber:               Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          **Galveston, Texas; Thursday, June 13, 2019; 3:29 p.m.**

2                              **(Call to order)**

3          **THE COURT:**  Please be seated, everyone.

4          Welcome, everyone, to this pretrial hearing in Cause

5  Number 3:18-CR-24-1, the *United States of America versus*

6  *Mr. John David Knowlton*.  If counsel could just approach the

7  bench and introduce themselves to the Court and state the

8  parties they represent, starting with the Government?

9          **MS. FENELON:**  Good afternoon, your Honor, Zahra

10 Fenelon for the United States.

11         **THE COURT:**  Okay, counsel.  And?

12         **MR. GALLAGHER:**  And Philip Gallagher for

13 Mr. Knowlton, who is present.

14         **THE COURT:**  Great, thank you.  Welcome, Mr. Knowlton.

15 Mr. Knowlton, if you'd like to come forward, sir, since this --

16         **THE DEFENDANT:**  Well, sir, I'd like to address the

17 Court if I may.

18         **THE COURT:**  Yes, sir.

19         **THE DEFENDANT:**  What are you doing?

20         **MR. SPEAKER:**  Well if you approach, I'm coming up

21 here.

22         **THE DEFENDANT:**  Why?

23         **MR. SPEAKER:**  Because I --

24         **MR. GALLAGHER:**  Mr. Knowlton, if you want to speak to

25 the judge, --

3

1          **THE COURT:**  Yes, sir?

2          **THE DEFENDANT:**  Okay, so are we on the record, sir?

3          **THE COURT:**  Yes, sir.

4          **THE DEFENDANT:**  Okay.  I'm visiting this Court as a

5    lawful person.  There has been a mistake.  I have been

6    misidentified and as a political status and has been

7    misrepresented to this Court.  I am not acting in a capacity a

8    United States citizen or a citizen of the United States.  I am

9    a Texan national and a State citizen.  I am not subject to the

10   jurisdiction of this Court and claim remedy and relief under

11   Federal law, Title 50, Appendix 7(c) and (e).  I wish my cargo

12   and vessel which is permanently domiciled on the land and soil

13   of Texas to be released and all charges against them to be

14   eliminated.  I wish a prosecutor's bid bond and performance

15   bond to be brought forward and paid to me as damage for the

16   false arrest in determining my vessel in violation of my

17   Article Four guarantees under the Constitution of the United

18   States.  I would like to see those bonds, please, the bid bond

19   and performance bond.

20         **THE COURT:**  Okay.  Respectfully, sir, I understand

21   your argument.  But you're under the jurisdiction of the Court.

22   Federal charges have been brought against you.  I know you

23   don't agree with --

24         **THE DEFENDANT:**  So what jurisdiction is that, sir?

25         **MR. GALLAGHER:**  You should let --

1          **THE DEFENDANT:**  Because --

2          **MR. GALLAGHER:**  Please let the judge finish his

3    sentence.

4          **THE COURT:**  Okay, no, I -- it's okay, sir, I

5    understand.  I mean, I understand that you object to the

6    Court's jurisdiction.  But respectfully the Court has

7    jurisdiction over you in this matter and it's going to proceed.

8    I -- you've made your statement on the record.  It's a matter

9    of the record in this case.  But my job and the job of the

10   prosecution and defense counsel are to proceed with defending

11   you or prosecuting you on the charges that have been brought

12   against you.

13         **THE DEFENDANT:**  So the Court is trying to rush to

14   judgment then.

15         **THE COURT:**  No, sir.  We're going to proceed on the

16   charges that have been brought against you in this case.  It's

17   set for trial on Monday.  And I'm going to proceed with the

18   trial on Monday.  And I know you object to the Court's

19   jurisdiction --

20         **THE DEFENDANT:**  But as jurisdiction on your own --

21   excuse me, I'm sorry.

22         **THE COURT:**  Oh, no, no, sir.  But you'll have an

23   opportunity to appeal that issue to the Fifth Circuit and then

24   ultimately to the U. S. Supreme Court.  But, you know, I've got

25   to follow the law as it is before me.  The law is there's been

1    an indictment brought against you.  I have to proceed under the

2    indictment.  Since it's not been dismissed, I have to proceed

3    under that indictment.  And once the proceedings are over, you

4    have the right to appeal to the Fifth Circuit --

5              **THE DEFENDANT:**  But who is bringing the indictment,

6    sir?

7              **THE COURT:**  The United States of America.

8              **THE DEFENDANT:**  Who is the United States of America?

9              **THE COURT:**  The Federal government.  I'm not sure, I

10   don't understand your question.  I'm sorry.

11             **THE DEFENDANT:**  Well usually it's a person, a living,

12   breathing person that will bring an indictment and make a

13   charge against someone.

14             **THE COURT:**  Okay.

15             **THE DEFENDANT:**  Who is that?

16             **THE COURT:**  I know that there are witnesses that have

17   provided testimony to support the indictment.  That's what the

18   trial is about.  I mean, we're going to have a trial.  You get

19   to hear the witnesses that are coming forward against you as to

20   what crimes you allegedly committed, and the Court's going to

21   adjudicate those.  And then after we're done, if you still

22   wish, and I know you do, to challenge the Court's jurisdiction,

23   you'll have an opportunity to do that.

24             **THE DEFENDANT:**  Well, sir, on your own website you

25   state that jurisdiction must be proven on the record.  So

1    before anything can happen, may I see that?

2              **THE COURT:**  Okay.

3              **THE DEFENDANT:**  It's on your website --

4              **THE COURT:**  Yeah.

5              **THE DEFENDANT:**  -- what is required for trial and

6    everything else, and in there it specifically states that proof

7    of jurisdiction must be on the record.  I am asking to see that

8    jurisdiction, sir.

9              **THE COURT:**  I don't know what to tell you other than

10   the fact that there is an indictment that's been filed --

11             **THE DEFENDANT:**  Well we can't go forward until

12   jurisdiction is proven because that would be a lack of

13   jurisdiction, and the Supreme Court has already held against it

14   and ruled against it.

15             **THE COURT:**  I know --

16             **THE DEFENDANT:**  The Court has no authority to decide

17   its own jurisdiction.

18             **THE COURT:**  I'm going to move forward with the

19   indictment.  And then if you wish to continue to object to the

20   Court's jurisdiction, you'll have to do it either on appeal or

21   at the end of the trial.  But I'm going forward.  And I --

22             **THE DEFENDANT:**  Okay, sir, I do not consent to it.

23             **THE COURT:**  Okay.

24             **THE DEFENDANT:**  But I would also like to have a full

25   copy of the voice recordings and the transcripts of this for my

1    appeal.

2           **THE COURT:**  Yes, sir, they will be available for you.

3    And, Mr. Gallagher, you know how to --

4           **THE DEFENDANT:**  Well, he's fired.

5           **THE COURT:**  Okay.

6           **THE DEFENDANT:**  Or are you telling me I can't fire

7    him, too?

8           **THE COURT:**  Okay, --

9           **THE DEFENDANT:**  I mean, he's brought up evidence.  He

10   said they got something from the FBI.  I didn't know the FBI

11   was even involved in this.

12          **THE COURT:**  Okay, so, Mr. Gallagher, are you no

13   longer representing or have you been --

14          **MR. GALLAGHER:**  So may -- two things.

15          **THE COURT:**  Okay.

16          **MR. GALLAGHER:**  First, when you were initially

17   asking, yes, of course, if we're appointed to represent him on

18   appeal, Mr. Knowlton on appeal, we will make arrangements to

19   order the transcript and prepare that and put that in the

20   Court's record.

21          Onto the second point, I only know what Mr. Knowlton

22   has said.  Obviously if he wishes to proceed on his own or to

23   hire his own counsel, that's his right.  And so I would ask

24   that the Court clarify which of those he wishes to do.  And if

25   he wishes to proceed pro se, to conduct the, I'm sorry, the

1   *Faretta* colloquy that I'm sure is in your bench book --

2        **THE COURT:**  Right.

3        **MR. GALLAGHER:**  -- to effect that and then allow him

4   to proceed pro se should he show the Court that that is in fact

5   a knowing waiver of his right to counsel, your Honor.

6        **THE COURT:**  Okay.  So, Mr. Knowlton, do you wish to

7   proceed pro se in this case and fire Mr. Gallagher?

8        **THE DEFENDANT:**  Yes, sir.  Also, I would like it on

9   the record, because of your *Black's Law Dictionary* satanic book

10  of changed words and everything like that, if I don't

11  understand some word, I will question because the dictionary is

12  what we the people use.  You all use the *Black's Law Dictionary*

13  which changes the words of everything else.  So I want to

14  note -- I want that noted.

15       **THE COURT:**  Yes, sir, it is noted.  I'm just going to

16  take just a brief recess, Mr. Gallagher, counsel, and I'll be

17  right back.  I want to take a look at the bench book charge and

18  I also want to take a look at the indictment in this case so --

19       **MR. GALLAGHER:**  May I ask one quick question?

20       **THE COURT:**  Yes, sir.

21       **MR. GALLAGHER:**  And obviously that's no objection,

22  your Honor.  Would it be -- I -- like I said, I think the

23  *Faretta* colloquy is in your bench book.

24       **THE COURT:**  It is.

25       **MR. GALLAGHER:**  Okay.  I just --

1              **THE COURT:**  (Indiscernible)

2              **MR. GALLAGHER:**  -- wanted to make sure.  If it would

3    be helpful, I could ask someone to email me something but,

4    okay.

5              **THE COURT:**  Oh, no, it's right here.

6              **MR. GALLAGHER:**  Then, sorry.

7              **THE COURT:**  So I'm going to -- I just want to take a

8    look at it.  But in order for me to do that, I want to make

9    sure I've got all the information regarding the indictment.

10             **MR. GALLAGHER:**  Of course, okay.

11             **THE COURT:**  So (indiscernible)

12             **THE DEFENDANT:**  Sir?

13             **THE COURT:**  Oh, I'm sorry, yes, sir.

14             **THE DEFENDANT:**  Sorry, I'm sorry, I didn't mean to --

15             **THE COURT:**  Oh, no, no, that's --

16             **THE DEFENDANT:**  I would still like to see the bid

17   bond and the performance bond, her license from the State or

18   the Supreme Court, whoever license them, not a bar card.  And

19   also the Foreign Agents Registry Act (sic).

20             **THE COURT:**  Okay, for whom?

21             **THE DEFENDANT:**  Her.

22             **THE COURT:**  Okay, for -- okay.

23             **THE DEFENDANT:**  Because she is foreign to me.

24             **THE COURT:**  **Okay.**  Give me about maybe ten minutes.

25   I'll be right back.

1          **MR. GALLAGHER:**  Thank you, your Honor.

2          **MS. FENELON:**  Thank you, your Honor.

3          **MARSHAL:**  All rise.

4      **(Recess taken from 3:37 p.m. to 3:59 p.m.)**

5          **MARSHAL:**  All rise.

6          **THE COURT:**  Please be seated, everyone.  If counsel

7   and Mr. Knowlton, if you can please approach.  I reviewed your

8   request, Mr. Knowlton, and the Court's making the following

9   findings before we get started.  I find that I do have

10  jurisdiction over this matter pursuant to my authority as a

11  Federal judge and the indictment that's been brought before the

12  Court.  I also find that there is no need for a performance

13  bond in this case.  I understand your arguments but the Court

14  finds that there is no need for a performance bond in this

15  case.  And there's also no need to have counsel for the

16  Government register as a foreign agent.  If I'm wrong, you can

17  take those issues up with the Fifth Circuit and the Supreme

18  Court.  But I'm proceeding on the basis of having jurisdiction

19  in this case by my authority as a Federal District Judge and

20  the indictment that's been presented before me.  And I

21  understand that you don't agree to that.

22         The next thing I need to do is talk to you about your

23  decision to fire Mr. Gallagher as your counsel in this case.

24  You do have a constitutional right for self-representation.

25  There's no question about that.  However, before you waive your

1    right to a counsel in this case, I've got to make sure that

2    that waiver is knowing and voluntary, and I need to ask you a

3    series of questions under oath.  So if you could, raise your

4    right hand, sir.

5         **(Defendant sworn)**

6         **THE COURT:**  Okay, Mr. Knowlton, have you ever studied

7    law before?

8         **THE DEFENDANT:**  No.

9         **THE COURT:**  Okay.  Have you ever represented yourself

10   in a criminal action before?

11        **THE DEFENDANT:**  Yes.

12        **THE COURT:**  Okay, and can you tell me a little bit

13   about that?

14        **THE DEFENDANT:**  Well, that was the fight that I was

15   having with the State --

16        **THE COURT:**  Okay.

17        **THE DEFENDANT:**  -- and the State basically gave up

18   and turned it over to you all because they were losing.

19        **THE COURT:**  Okay.  So in the State Court proceeding,

20   you were -- you represented yourself.

21        **THE DEFENDANT:**  Yes.

22        **THE COURT:**  Okay.  And in this case, do you

23   understand that you've been charged with two counts in the

24   indictment; the first count is Count One, receipt of child

25   pornography in violation of 18 USC, Sections 2252A(a)(2)(B) and

1    2252A(b)(1), and Count Two is for possession of child

2    pornography in violation of 18 USC, Section 2252A(5)(B) and

3    2252A(b)(2)?  Do you understand that you've been charged -- I

4    know you don't agree with the charges but do you understand

5    that you've been charged in this case under those counts?

6              **THE DEFENDANT:**  Yes.

7              **THE COURT:**  And you understand that the penalty for

8    Count One, if you are found guilty, is not less than five years

9    and not more than 20 years in prison, up to a $250,000 fine,

10   supervised release for any term of years not less than five

11   years up to life, and a $100 special assessment, and then a

12   $500 special assessment for the Justice For Victims Trafficking

13   Act of 2015; do you understand that if you are found guilty on

14   Count One, this is the maximum penalty available?

15             **THE DEFENDANT:**  Yes.

16             **THE COURT:**  Okay.  And then with respect to Count

17   Two, you understand that if you're found guilty with respect to

18   Count Two, you face up to ten years in prison, up to a $250,000

19   fine, supervised release for any term of years not less than

20   five years up to life, a $100 special assessment, and a $500

21   special assessment under the Justice For Victims Trafficking

22   Act of 2015; do you understand that if you plead guilty -- or

23   if you are found guilty on Count Two, that is your potential

24   penalty?

25             **THE DEFENDANT:**  Yes.

13

1          **THE COURT:**  Okay.  And do you understand also that

2    given the nature of these crimes, if you are found guilty, you

3    may have to register as a sex offender in the State of Texas?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  Okay.  Do you understand that if you're

6    found guilty of more than one of these crimes, this Court can

7    order that the sentence be served consecutively, that is one

8    after another; you understand that?

9          **THE DEFENDANT:**  Yes.

10          **THE COURT:**  Okay.  And do you understand that there

11   are advisory sentencing guidelines that may affect your

12   sentence if you are found guilty?

13          **THE DEFENDANT:**  Yes.

14          **THE COURT:**  Okay.  And do you understand that if you

15   represent yourself, you are on your own, I cannot tell you or

16   even advise you how you should begin to try your case?  That

17   is, if you reject Mr. Gallagher as your lawyer, you're on your

18   own with respect to legal representation.  I can't advise you

19   or give you any advice on how to proceed.

20          **THE DEFENDANT:**  I understand.

21          **THE COURT:**  Okay.  And are you familiar with or have

22   reviewed the Federal Rules of Evidence?

23          **THE DEFENDANT:**  I've glanced at some but I'm still

24   looking over a couple questions I have.

25          **THE COURT:**  Okay.  Do you understand that the Rules

1   of Evidence govern what evidence may or may not be introduced

2   at trial, and that in representing yourself, you must abide by

3   those very technical rules, and that they will not be relaxed

4   for your benefit?

5              **THE DEFENDANT:**  Yes.

6              **THE COURT:**  Okay.  And are you familiar with the

7   Federal Rules of Criminal Procedure or have you -- or read

8   them?

9              **THE DEFENDANT:**  I've glanced at them.

10             **THE COURT:**  Okay, and do you understand that those

11  rules govern the way a criminal action is to be tried in

12  Federal Court and that you will be bound by those rules, and

13  they will not be relaxed for your benefit if you decide to

14  proceed on your own?

15             **THE DEFENDANT:**  Yes.

16             **THE COURT:**  Mr. Knowlton, I must advise you that in

17  my opinion as a judicial officer, a trained lawyer would defend

18  yourself far better than you would defend yourself in this case

19  because of the rules that you have to comply with in order to

20  bring a case.  I think that it would be unwise for you to try

21  to represent yourself.  And since you've not defended yourself

22  in a Federal Court and you're not familiar with this Court's

23  criminal procedure, I strongly urge you not to represent

24  yourself in this case.  But you have a constitutional right to

25  do so.  It's just that without legal training, without a

1    thorough knowledge of the Rules of Evidence, you might not be

2    able to represent yourself as well as a lawyer trained to do

3    so; do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  And Mr. Gallagher has appeared

6    before me over the last nine years, a competent attorney, and I

7    think that he would be better trained to represent you in this

8    case.  But it's your decision my understanding is to fire him

9    as your lawyer.

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.  And this decision is entirely

12   voluntary, nobody has threatened you or forced you to make this

13   decision.

14             THE DEFENDANT:  Oh, no.

15             THE COURT:  Okay.  In light of your answers, sir, I

16   find that you have knowingly and voluntarily waived your right

17   to counsel and I will therefore permit you to represent

18   yourself in this case.  However, Mr. Gallagher, I'm going to

19   appoint you as advisory counsel in this case, that I'm ordering

20   you to stand by in case Mr. Knowlton decides to change his mind

21   to represent him in this matter.  The nature of these charges

22   and the seriousness of these charges I truly believe that

23   counsel is necessary to defend Mr. Knowlton in this case.  But

24   he's got a constitutional right to waive counsel, and the Court

25   respects that.  But I'm ordering you nevertheless to be

16

1   available.

2           **MR. GALLAGHER:**  Yes, your Honor.

3           **THE COURT:**  So, Mr. Knowlton and counsel, you're

4   going to proceed on your own.  We're set for trial on Monday at

5   8:30.  I need all of you to be here at 8:30.  The jury's going

6   to be in a little -- oh, my understanding is you want a jury

7   trial.

8           **THE DEFENDANT:**  No, we were talking about a bench

9   trial.

10          **THE COURT:**  Okay.

11          **THE DEFENDANT:**  But there's some other discovery

12  stuff that I would still like to have.

13          **THE COURT:**  Okay, let's talk about any --

14          **THE DEFENDANT:**  (Indiscernible)

15          **THE COURT:**  -- outstanding motions or --

16          **THE DEFENDANT:**  Say again.

17          **THE COURT:**  Oh, any outstanding motions or discovery

18  that's needed, let's talk about that.

19          **THE DEFENDANT:**  Okay.  I need to put in -- I've got a

20  couple things that I wanted to ask the Court and everything

21  like that for discovery, --

22          **THE COURT:**  Okay.

23          **THE DEFENDANT:**  -- and it would take me at least two

24  days to get that typed up.  I can get it over the weekend.  But

25  how do you enter into your system here?  Do I give it to --

1    there's not a clerk to hand it to, is there?

2              **THE COURT:**  Yeah, you have to file it --

3              **THE DEFENDANT:**  Electronically.  And I heard you had

4    to have permission for that.

5              **THE COURT:**  Right.  You're going to have manually

6    file it.  That is whatever you have, you'll have to bring it to

7    the court clerk and the court clerk will file it and then give

8    me a copy.  Unfortunately, the court rules don't allow pro se

9    litigants to file their own documents in terms of using CM/ECF,

10   which is our computer system, because we've had problems in the

11   past.  So, pro se litigants, respectfully you've got to

12   actually physically come down and file it.  So when -- I'm

13   sorry.

14             **MR. GALLAGHER:**  May I make a suggestion, your Honor?

15             **THE COURT:**  Oh, yes.

16             **MR. GALLAGHER:**  There's a similar case I had, and

17   what another judge had asked is that we file things for the pro

18   se litigant which obviously we can do as long as it's on the

19   understanding that --

20             **THE COURT:**  You're not representing --

21             **MR. GALLAGHER:**  Right, so I'm not signing it, right,

22   so I'm not --

23             **THE COURT:**  (Indiscernible)

24             **MR. GALLAGHER:**  -- reviewing things to determine

25   whether or not you -- right, I wouldn't file something --

1    **THE COURT:**  Right.

2    **MR. GALLAGHER:**  -- that I wouldn't stand behind.  But

3  in this case, I'm just literally helping to get something

4  before the Court.  And so it's Mr. Knowlton -- if it's fine

5  with the Court, he could email things to me and I would file

6  them under my ECF as a -- but as a -- for him immediately.

7    **THE DEFENDANT:**  I would have no problem with that to

8  make sure that he is not liable for anything.

9    **THE COURT:**  Okay, that actually, Mr. Knowlton, works

10  out really well.  Basically a lot -- giving it to Mr. Gallagher

11  and then Mr. Gallagher will get it on file.  But also what's

12  going to happen is that you need to serve a copy on the U. S.

13  Attorney.  So, Mr. Gallagher, can you make sure that when you

14  get it, you also send it to the U. S. Attorney's --

15    **MR. GALLAGHER:**  Right.  Well, and that also happens

16  automatically with the electronic filing.  It goes directly to

17  counsel of record.

18    **THE COURT:**  Okay.

19    **MR. GALLAGHER:**  But I can make sure --

20    **MS. FENELON:**  Your Honor, the only thing is we are

21  now, you know, this is Thursday before trial that's set for

22  Monday.  And to be able to -- and to get discovery over the

23  weekend when we begin on Monday the 17th, it's pretty late in

24  the game to be able to get reciprocal discovery, for us to do

25  what we would need to in order to be able to understand or talk

1    to any of their witnesses or look at the documentation that

2    Mr. Knowlton's going to provide if we are not going to be

3    getting it until Saturday or Sunday, one or two days before

4    trial.  So it is pretty late.

5           **THE COURT:**  Right.  I guess what I need to find out

6    is what documents are you requesting and have these documents

7    been requested before now?  Because under the Court's rules,

8    you know, motions within, you know, seven days of trial, the

9    Court disfavors those greatly because the problem is the

10   parties don't have an opportunity to adequately respond.  So

11   have these requests been made earlier?  And if they've not been

12   made earlier, why not?  And --

13          **THE DEFENDANT:**  No, sir.  This is the first time I've

14   actually come into this courtroom.  If you -- you might not

15   remember when it was first scheduled for a couple weeks ago and

16   I didn't know that the date had changed.  And that's why I

17   asked you, I don't know if you remember when I came, --

18          **THE COURT:**  (Indiscernible)

19          **THE DEFENDANT:**  -- what about me.  I was supposed to

20   be here.

21          **THE COURT:**  Right.

22          **THE DEFENDANT:**  And then the next day I got the

23   letter from him stating that it had been postponed until today.

24          **THE COURT:**  Okay.

25          **THE DEFENDANT:**  So if the -- a family issue that

1  Mr. Gallagher had, we probably would have had time then to get

2  everything in there, but he had that family emergency that he

3  had to take care of and that's why it was postponed.

4       THE COURT:  I mean, did you make a request for these

5  documents through Mr. Gallagher from the Court or from the U.

6  S. Attorneys?  I mean, what document -- I guess, first of all,

7  what documents are you talking about?

8       THE DEFENDANT:  Well, I have a list at the house,

9  sir.  I'm sorry I did not bring it.

10       THE COURT:  Okay.  So what's the nature of -- I mean,

11  what's the nature of what are we talking about?

12       THE DEFENDANT:  I would like to have -- one of the

13  things that I can remember off the top of my head is I would

14  like to see their oath of office and their bonds.

15       THE COURT:  Okay, that's respectfully irrelevant to -

16  - I mean, I know that you believe it is but that's irrelevant

17  to the charges that are being brought against you.  If I'm

18  wrong, --

19       THE DEFENDANT:  Well, if --

20       THE COURT:  -- then you can bring those up before the

21  Fifth Circuit so --

22       THE DEFENDANT:  If she's not -- doesn't have status

23  of standing to bring something into court, then how do I know?

24       THE COURT:  Counsel, you're with the United States

25  Attorney's Office, right?

1              **MS. FENELON:**  I am, your Honor.

2              **THE COURT:**  Okay.  And you're boss is the United

3     States Attorney for the Southern District of Texas, Mr. Ryan

4     Patrick; is that correct?

5              **MS. FENELON:**  Yes, your Honor.

6              **THE COURT:**  Okay.  She is an officer of the Court.

7     She's representing that she is a duly representative of the U.

8     S. Attorney in this district so I'm going to find that she's

9     authorized to proceed in this matter.  I understand you don't

10    agree with that but I believe that to be the case.  So is there

11    any other documents that you think that you need to get ready

12    for trial related to the charges that are being brought against

13    you?  And I know that you believe that --

14             **THE DEFENDANT:**  Yes, sir.  I would like to see the

15    warrant.

16             **THE COURT:**  Okay.  I think we have the warrant.

17             **THE DEFENDANT:**  No, I'm talking the warrant for the

18    other surveillance that was done.

19             **THE COURT:**  Okay, what other surveillance?  I mean

20    (indiscernible)  okay, sure.

21             **THE DEFENDANT:**  Excuse me, sir, one moment.

22             **THE COURT:**  Yes, sir.

23        **(Pause)**

24             **THE DEFENDANT:**  I apologize, your Honor.

25             **THE COURT:**  Oh, no, take your time, sir.

1      **(Defendant/counsel confer)**

2          **THE DEFENDANT:**  So, sir, on --

3          **THE COURT:**  Oh, I don't have it but it -- you can

4  tell me.

5          **THE DEFENDANT:**  Okay.  In an instant investigation on

6  February 6th, 2016, your affiant was conducting an online p2p

7  child porn inquiry and identified target IP address 73 blah,

8  blah, blah, I'm not going to go into that, referring to as

9  target IP sharing multiple times -- sharing multiple in excess

10  of ten files on eDonkey and p2p networks, okay.

11          **THE COURT:**  Okay.

12          **THE DEFENDANT:**  And then I guess he was network

13  activity on the 28th of November, 2015, and January 16th, 2016.

14          **THE COURT:**  Okay.

15          **THE DEFENDANT:**  Okay.  Now, Mr. Gallagher has said

16  that, you know, didn't really matter.  But I would like to see

17  the warrant that said that they can surveil we the people.

18          **THE COURT:**  What do you mean?  That -- I'm lost, I'm

19  sorry.  Their -- and --

20          **THE DEFENDANT:**  They're saying they are doing a

21  check --

22          **THE COURT:**  Okay.

23          **THE DEFENDANT:**  -- on the networks and everything

24  like that, and they identify my IP address.

25          **THE COURT:**  Okay.

23

1      **THE DEFENDANT:** Okay.

2      **THE COURT:** Pursuant to a warrant.

3      **THE DEFENDANT:** No.

4      **THE COURT:** Okay.

5      **THE DEFENDANT:** This was an affidavit to get a

6 warrant to search the house.

7      **THE COURT:** Okay.

8      **THE DEFENDANT:** So I would like to see the warrant

9 that allowed them to spy on us, on me.

10      **THE COURT:** Okay.

11      **THE DEFENDANT:** On anybody really. And on February

12 6th, which the other judge -- and I don't remember his name and

13 no disrespect, sir, --

14      **THE COURT:** (Indiscernible)

15      **THE DEFENDANT:** -- but he took my passport. If I was

16 going to leave the country, I'd have left a long time ago. In

17 my passport, I was out of the country on February 6th.

18      **THE COURT:** Okay.

19      **THE DEFENDANT:** I had been out of the country. So I

20 would like to see the warrant that gave them the authority to

21 do the things, to do their monitoring and everything.

22      **THE COURT:** Okay. I'm going to ask the U. S.

23 Attorney --

24      **THE DEFENDANT:** I've --

25      **THE COURT:** Okay, first, on that issue, --

1           **MS. FENELON:**  May I respond, your Honor?

2           **THE COURT:**  Yes, ma'am.

3           **MS. FENELON:**  In regards to what Mr. Knowlton's

4    talking about, this is an open peer-to-peer network that any

5    individual can get onto and be able to go and see the files

6    that may be sharable.  There is no search warrant or any type

7    of warrant that's necessary in order to do that.  And as far as

8    being able to find out or ascertain the facts surrounding that

9    circumstance, I believe that cross examination would allow him

10   to do so.  And as we have stated in our filing, Agent Lee

11   Erickson (phonetic) will be here to testify in regards to the

12   stuff that he took as far as his undercover session on the

13   peer-to-peer network eDonkey or eMule.

14          **THE COURT:**  Okay.  So what the Government says is the

15   evidence they're going to produce is that the information was

16   public knowledge, I mean in the public realm and that there was

17   no search warrant needed.  So there is no search warrant to be

18   turned over.

19          **THE DEFENDANT:**  Okay.

20          **THE COURT:**  So about --

21          **THE DEFENDANT:**  I mean, --

22          **THE COURT:**  But I want to get through all your lists

23   as best we can so --

24          **THE DEFENDANT:**  Well, I don't have my list in front

25   of me, your Honor, I'm sorry.

1      **THE COURT:**  Okay, well, we've got to talk about it

2   because we're set for trial on Monday so, you know, if it's

3   really, really important, then we need to talk about it now.

4      **THE DEFENDANT:**  Well it is really, really important

5   but I didn't know that the Court was going to rush to judgment

6   so fast.

7      **THE COURT:**  I'm not rushing --

8      **THE DEFENDANT:**  Trying to --

9      **THE COURT:**  -- to judgment.

10     **THE DEFENDANT:**  -- get into this.

11     **THE COURT:**  I'm not rushing to judgment.  We're set

12   for trial on Monday.

13     **THE DEFENDANT:**  I understand that.

14     **THE COURT:**  You know, if there are outstanding

15   documents or discovery that's needed to get ready for trial, we

16   should have been talking about that a long time ago; not now.

17   But I'm willing to take the time now to go through and see if

18   there's any documents.  I mean, if it's really important, then

19   you should know what they are.  And if you do, then let's talk

20   about them; because so far the documents you've talked about

21   and things you want either don't exist or are not necessary.

22     **THE DEFENDANT:**  Well, in one of his statements that

23   he had, they were using a special software.

24     **THE COURT:**  Okay.

25     **THE DEFENDANT:**  So what is the special software that

26

1    was -- I believe it was the quote -- I'm -- it was pretty close

2    to a special software designed specifically for law enforcement

3    and everything like that.

4            THE COURT:  Okay.

5            THE DEFENDANT:  So I asked for that.

6            THE COURT:  When did you ask for it?

7            THE DEFENDANT:  I asked that from the other court.

8            THE COURT:  Okay.

9            THE DEFENDANT:  And I got a letter back from the DHS

10   saying they don't give that unless public -- they don't give

11   out any other information except what's public knowledge.

12           THE COURT:  Okay.  What other court; is this State

13   Court or --

14           THE DEFENDANT:  Yes.

15           THE COURT:  State Court, okay.

16           THE DEFENDANT:  I'm sorry, I feel that you might be

17   at a disadvantage here and why I am, and no disrespect, kind of

18   jumping back a little bit, sir.

19           THE COURT:  Okay.

20           THE DEFENDANT:  Okay, this has been going on for

21   three years, okay?  And it was like all of a sudden, oh, it's

22   got to be moved to Federal because the State lost.  And I would

23   also ask after out of the light of what's going on in

24   Washington and everything like that and the illegal spying and

25   everything like that, I would ask for DHS's, Galveston Police,

1  the DA's office over there, I would like all their records.  I

2  want emails, I want text messages, any recordings, and notes

3  they took because it was like a concerted effort to push this

4  over to Federal and then automatically get me into trial just

5  as fast as possible.  And Mr. Gallagher, I can't defend you, I

6  don't have an opening statement, da ta da, da, you know, you

7  need to take a plea, you have to take a plea, okay?  This is a

8  rush to judgment.  This is basically a -- I wouldn't say a

9  kangaroo court but they are really trying real hard to get rid

10 of me because even if one-tenth of what I say and what I'm

11 griping about is true, every case that Mr. Erickson and all

12 that little Homeland Security and Mr. Gross (phonetic) who had

13 no training whatsoever, all their cases get opened up and they

14 have to be reviewed.

15         **THE COURT:**  Okay.

16         **THE DEFENDANT:**  And that is what the problem is.

17 That's why I'm being railroaded because the best way to shut it

18 down is to put me in jail and then they're through with it.

19         **THE COURT:**  Okay.  Well, I'm not trying to rush you

20 to jail, that's the first thing.  I want to make sure that you

21 have an opportunity to defend yourself --

22         **THE DEFENDANT:**  Well, when I'm dealing with everybody

23 and the -- with the weight of the Federal government, okay, you

24 know, you read in the paper, Houston is one of the largest

25 trafficking areas in the -- one of the fourth largest or

1    whatever it is trafficking areas in the nation.  But you sure

2    don't hear anybody getting arrested for it so I wonder who's

3    actually running it.

4              **THE COURT:**  Yeah, I --

5              **THE DEFENDANT:**  I mean, that doesn't -- that didn't

6    affect my case or anything like that, okay, but the illegal

7    acts by them puts a stain on them and all their cases.  Just

8    like they lied on an affidavit saying that they bought this

9    drug from them and then they go in there and do a police raid

10   and they kill the two people in there.  Now, all of his cases

11   that that detective has worked on are being reviewed.  And a

12   lot of people are getting out and everything else; whether

13   they're guilty or innocent, I don't know.

14             **THE COURT:**  Well, I know that particular case you're

15   referring to, but I'm focused on this case.  And if there's

16   evidence in this case that you know of that there was some

17   misbehavior or the parties or the Government didn't follow the

18   law, I need to know that.  And that's what I'm focused on.  I

19   can't correct the other things going on outside this case.  I

20   don't know what happened in other cases.  That's not before me.

21   But what I have before me is your case with these allegations

22   and this indictment.  If there are allegations that the

23   Government didn't do something right, I need to know about that

24   and I need to address that with the U. S. Attorneys.

25             **THE DEFENDANT:**  Well that's what I've been trying to

1   bring up, your Honor, and it's -- we're still having court on

2   Monday, okay?  It's like is it legal or unlawful for the

3   Government to enter private property?

4          **THE COURT:**  Okay.

5          **THE DEFENDANT:**  Simple question.  I mean, very simple

6   to answer because my property that I live on, my neighborhood,

7   it is all private property.  It says in the deeds at the thing.

8   The roads do not belong to the City of Lamar.  That is private

9   property.

10          **THE COURT:**  Okay, but, I mean, so what -- I don't

11   understand your argument that --

12          **THE DEFENDANT:**  (Indiscernible) did you have a

13   warrant to come in there?  Nobody is going to stand up for my

14   rights, sir.

15          **THE COURT:**  Okay, but did they -- so you're arguing

16   that they did not have a warrant to seize what they seized?  I

17   mean, I'm just trying to get at what --

18          **THE DEFENDANT:**  They didn't have a warrant to enter

19   my property or enter anybody else's that lives there in that

20   community's property.

21          **THE COURT:**  Okay.

22          **THE DEFENDANT:**  They were trespassing.

23          **THE COURT:**  Okay.  Is -- from the U. S. Attorney's

24   position (indiscernible) --

25          **MS. FENELON:**  Your Honor, there -- I apologize.

**EXCEPTIONAL REPORTING SERVICES, INC**

1           THE COURT:  Oh, I'm sorry, on the issue of a, you

2    know, warrantless search or warrantless seizure.

3           MS. FENELON:  Your Honor, there was a search warrant.

4    When both detectives and agents came to Mr. Knowlton's home in

5    order to search the home and to seize evidence, there was a

6    warrant that was signed.

7           THE COURT:  Okay.

8           THE DEFENDANT:  Yes, sir, I don't deny that.

9           THE COURT:  Okay.

10          THE DEFENDANT:  I'm not denying that.

11          THE COURT:  Then --

12          THE DEFENDANT:  I'm saying to get there.

13          THE COURT:  (Indiscernible)

14          THE DEFENDANT:  How they got there.

15          THE COURT:  So they had a warrant to search your

16   house but the warrant didn't extend to the driveway or the

17   roads to get there?

18          THE DEFENDANT:  Does it apply to everyone else that

19   lives there that owns the streets?  The -- okay, --

20          THE COURT:  Okay.

21          THE DEFENDANT:  -- where I live, the streets are

22   private property.  It's actually in my deed.  I own half the

23   street, people across the street own the other half.

24          THE COURT:  Okay.

25          THE DEFENDANT:  I own the water in the back to the

31

1   center; the other people own the other (indiscernible) the

2   whole thing, --

3            **THE COURT:**  Okay.

4            **THE DEFENDANT:**  -- okay.  You're allowed in there

5   actually when we first moved in because the police do not have

6   jurisdiction in there because it is private property.  We could

7   ride our golf carts and you can drink your beer and they can't

8   say a thing to you because it's all private property.

9            **THE COURT:**  Okay, then --

10           **THE DEFENDANT:**  To be able to see my house and

11  surveil my house, take pictures of it and everything else, you

12  would have to drive in to there.  You cannot see it from a

13  public road.  It's not a public road, it's a private road, and

14  it's listed as such with signs.

15           **THE COURT:**  And I'm still trying to figure out how

16  this relates to your argument.  So you're arguing that the

17  Government didn't have authority to get to your house --

18           **THE DEFENDANT:**  That's right.

19           **THE COURT:**  -- because they were on private property.

20           **THE DEFENDANT:**  Yes, sir.

21           **THE COURT:**  Okay.

22           **THE DEFENDANT:**  There -- sir, --

23           **THE COURT:**  Okay, but I get that but the problem then

24  is, you know, what's the discovery -- I mean, so that's your

25  argument.  What's the discovery that you are looking for that

1  from the Government that you don't -- the belief that you have?

2  I mean, you know it's private property, you know how to make

3  the argument; what do you need from the Government?  I mean, --

4          **THE DEFENDANT:**  I want to know -- I would like to

5  know if there was one.

6          **THE COURT:**  Well, he -- she says from the U. S.

7  Attorney, there was a warrant.  They exercised a warrant to get

8  on the property.  And do you not have a copy of that warrant?

9  Well, you said you acknowledged the warrant existed so --

10          **THE DEFENDANT:**  Yes.

11          **THE COURT:**  -- you just don't agree that it gives

12  you -- gives them authority to cross your property.

13          **THE DEFENDANT:**  Other people's property.

14          **THE COURT:**  All right, and that's a legal argument so

15  you make that argument at trial.  But what is it that you want

16  for discovery?

17          **THE DEFENDANT:**  (No audible response)

18          **THE COURT:**  I mean, you've got every -- it sounds

19  like you've got everything you need to make the argument

20  against the Government that they were trespassing or the

21  warrant wasn't a valid warrant.  I mean, you've got everything

22  in your mind that you need to argue it so what do you need from

23  them?

24          **THE DEFENDANT:**  Well, --

25          **THE COURT:**  I'm not trying to rush you to trial.  I'm

1    just trying to figure out what is it that you need me to get

2    from them or talk to them about getting to you so that you can

3    be ready to defend yourself?

4             THE DEFENDANT:  Well, it's almost like you can't

5    defend yourself.

6             THE COURT:  Well, --

7             THE DEFENDANT:  Because the laws don't apply to

8    everyone equally.

9             THE COURT:  Okay.

10            THE DEFENDANT:  Any defect, and I -- and what I

11   understood was any defect in an affidavit, anything, one little

12   thing that's wrong in there, that affidavit then he has

13   committed perjury.

14            THE COURT:  Well that's an argument you got to make

15   at trial before the Court and then the Court rules on that

16   issue and then either goes forward or not.  But the immediate

17   question was you were saying there are all these documents and

18   things that you said that you needed from the Government and I

19   wanted to make sure that you got those.  And I'm not trying to

20   rush this case to trial.  I'm not.  But I'm not going to hold

21   up the trial for things that you don't even really -- you're

22   not really clear on what it is that they need to provide to

23   you.  So far I've heard legal argument, and those legal

24   arguments can be resolved with briefing before trial.  I mean,

25   you made the argument before the start of trial, I can hear the

1    evidence one way or the other, and then make the decision.  But

2    there's nothing -- I don't see what's holding this case up from

3    trial.  I'm still not there.

4          THE DEFENDANT:  Well I also still wanted a

5    clarification on your jurisdiction.

6          THE COURT:  Yeah.

7          THE DEFENDANT:  Territorial jurisdiction and personal

8    jurisdiction and everything like that.

9          THE COURT:  Yeah, I'm --

10         THE DEFENDANT:  (Indiscernible) have something

11   written up for it but --

12         THE COURT:  Okay, I'm making the decision on the

13   record that pursuant to my commission as a Federal judge and

14   the authority of the U. S. Attorney to bring indictments in

15   this jurisdiction, that the indictment is a valid indictment

16   and that the Court has jurisdiction to oversee the prosecution

17   of that indictment, of the charges in that indictment.  I

18   understand you don't agree with that but that's the Court's

19   finding.  And then as far as legal argument, once the trial's

20   over, you're free to make that argument, whatever argument you

21   wish, before the Fifth Circuit of the United States court -- or

22   the U. S. Supreme Court.  Counsel, did you want to --

23         MS. FENELON:  No.

24         THE COURT:  Okay, I'm sorry, you just -- so you're

25   free to make those arguments but I'm making a finding now on

```
1    the record that this is the case.  And, again, I'm not trying
2    to rush you to trial.  I just want to make sure that you have
3    what you need and so far you haven't told me anything that you
4    need that you don't already have.  I mean, you -- I understand
5    you disagree with the legal basis for the lawsuit.  That's an
6    argument to be made before the Court.  But what evidence are
7    you looking for from the U. S. Attorney's Office that you want
8    me to get from them?
9              THE DEFENDANT:  I'm not sure right now.
10             THE COURT:  Okay.
11             THE DEFENDANT:  I'm sorry.
12             THE COURT:  No, it's no problem.  I -- you know,
13   I'm -- I want to make sure you have everything.  So here's what
14   we're going to have to do.  This case has been set for trial on
15   this date for a long time.  We have to go forward on this day.
16   If there is some document that you find that the Government
17   didn't provide you that they should have provided you timely,
18   then you need to make the argument that it wasn't provided to
19   you timely and then I have to rule on that, whether or not it
20   was timely provided, whether or not it was relevant to the
21   charges, and whether or not the case can proceed without
22   those -- without that information.  But I can't do that until
23   we start trial and find out what it is exactly you're
24   complaining about.
25             THE DEFENDANT:  Okay.
```

1          THE COURT:  So respectfully we're going to start

2     trial on Monday.  Mr. Gallagher, you're going to stand by as

3     advisory counsel --

4          MR. GALLAGHER:  Yes, sir.

5          THE COURT:  -- in this case.  We've got -- oh, is it

6     a jury trial or a bench trial?  Because I've got 37 -- well,

7     actually 41 jurors set to come in tomorrow -- I mean Monday

8     morning at 7:30 in the morning.

9          THE DEFENDANT:  I would request a bench trial.

10          THE COURT:  Okay.  So before I honor that request,

11     you understand that you have a right to a jury trial in this

12     case.

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  And that you are waiving that

15     right to a jury trial and proceeding with a trial before the

16     bench.

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  You understand that, okay.  Does any --

19     as advisory counsel, does any -- or the Government, does anyone

20     have any reason to believe that a bench trial is not

21     appropriate in this case?

22          MS. FENELON:  Not from the Government, your Honor.

23          MR. GALLAGHER:  No, I -- no, your Honor.

24          THE COURT:  Okay.  Then based on that, Mr. Knowlton,

25     I will agree to a bench trial in this matter, I'm noting that

1    you're going to have a bench trial.  However, in case you

2    change your mind, I'm going to have the jurors ready to go on

3    Monday.  And then once we start, once you make the decision,

4    then I'll release those jurors.  I mean, I know you made a

5    decision but --

6            **THE DEFENDANT:**  Yes, sir, I understand.

7            **THE COURT:**  -- between now and the weekend, if you

8    want to --

9            **THE DEFENDANT:**  Yes, sir.

10           **THE COURT:**  -- think about it, I will let you.  You

11   know, you let me know before you get started.  But the -- well,

12   one second, sorry.  I've got to check on something really

13   quickly.  I'll be right back.  I need to talk to

14   (indiscernible) about the case manager about the jury so I'll

15   be right back.

16           **MARSHAL:**  All rise.

17       **(Recess taken from 4:34 p.m. to 4:43 p.m.)**

18           **MARSHAL:**  All rise.

19           **THE COURT:**  Okay, please be seated, everyone.

20   (Indiscernible) all approach again.  Mr. Knowlton, I -- we're

21   going to have to make a final decision with respect to a jury

22   now, and the reason is, is that this jury panel is being drawn

23   from people from Chambers County all the way down to Matagorda

24   County, which is, you know, some people are being called about

25   a hundred miles away from here.  And I don't want to have them

1    come down here without, you know, not -- for no reason.  So I

2    need to make sure that right now you understand that you are

3    waiving your right to a jury trial and it will be a bench trial

4    and I can release that jury so they don't have to make the

5    drive down on Monday morning.  So --

6              THE DEFENDANT:  Yes, sir.  That will be more

7    convenient for them.

8              THE COURT:  Okay.  So you understand that you are

9    waiving your right to a jury trial in this case and proceeding

10   before the bench.

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Okay.

13             MS. FENELON:  And, your Honor, if I may, in light of

14   the fact that there isn't going to be a jury that's coming at

15   7:30 in the morning, can we ask just because of the trial for

16   ourselves as well if we can maybe have a little bit of a later

17   start time?

18             THE COURT:  I was going to suggest the same thing.  I

19   mean, if we had a jury, I think we need to be down here at 8:30

20   so they can get here before traffic; now we can wait until

21   after traffic.  So what I'd like to do is start the trial at

22   10:30 on Monday.  That makes it easier for everyone, including

23   Mr. Gallagher and yourself, you don't have to fight the rush

24   hour traffic.  So we'll start at 10:30 Monday morning.  Now, we

25   took a quite break.  Are there any other documents?  I know

39

1    that you said you had a list.  Are there any other documents

2    that you can think of right now that you feel that the

3    Government needs to turn over to you that you don't have?  And

4    I'm -- and this doesn't foreclose you from making the argument

5    on Monday.  You know, if there's other things that you believe

6    that you should have seen that you're entitled to, I will rule

7    on that on Monday.  But right now, are there any other

8    documents?

9            **THE DEFENDANT:**  I cannot think of anything, sir.

10           **THE COURT:**  Okay.  Any -- since it's now

11   (indiscernible) bench trial, all I can do at this time is just

12   tell you to all look carefully at the Court's local rules and

13   also the Rules of Civil Procedure and Criminal Procedure -- I

14   mean Rules of Criminal Procedure and the Federal Rules of

15   Evidence.  Be sure that you're familiar with them.  With

16   respect to witnesses, if you need some witnesses to appear in

17   court and you need to issue any sort of subpoenas, you need to

18   let me know about that as soon as possible because if you wait

19   until the time of trial and people don't show up, then there's

20   nothing I can do.  Anyone have any specific questions about how

21   the trial will be conducted or any general questions at all?

22   First from the Government.

23           **MS. FENELON:**  No, it's a bench trial.  I don't think

24   that that's going to be an issue unless there's any kind of

25   timing factor that the Court want counsel to be aware of as far

1    as opening or closing or anything like that.

2              THE COURT:  Okay.

3              THE DEFENDANT:  This is Friday -- I mean this is

4    Thursday, correct, sir?

5              THE COURT:  Yes, sir.  And so trial is starting

6    Monday at 10:30.

7         (Defendant/Counsel confer)

8              THE DEFENDANT:  May I just -- may we step back?

9              THE COURT:  Oh, sure, sure.

10             THE DEFENDANT:  Excuse me, sir.

11        (Defendant/Counsel confer)

12        (Judge/Clerk confer)

13             MR. GALLAGHER:  Thank you, your Honor.

14             THE COURT:  Okay.  Is there anything you wanted to

15   ask, sir, or --

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Okay.  So what I'll do is I'll see you

18   all back here Monday at 10:30 in the morning.  I reviewed the

19   file.  There are no pending motions for the Court to rule on so

20   we should be able to get started right away.  With respect to

21   timing for opening and closing, how long -- I mean, this is a

22   bench trial so I'm, you know, we're not worried about a jury.

23   How long do you each side believe that they need for opening

24   statements?

25             MS. FENELON:  Ten minutes is more than adequate for

1    the Government, your Honor, for opening.  For closing, at the

2    most probably 30 minutes.

3              **THE COURT:**  Okay.  And Mr. Knowlton?

4              **THE DEFENDANT:**  Probably the same --

5              **THE COURT:**  Okay.

6              **THE DEFENDANT:**  -- or less on the closing.

7              **THE COURT:**  Okay, so ten minutes for the opening, 30

8    minutes for the closing for both sides.  And if there's some

9    reason why we need to adjust those times, that's not a problem

10   either.  As I said, we don't have a jury, it's to the bench.

11   Okay, is there anything else?  And basically what I plan to do

12   is look at the proposed jury charge for the Court's decision in

13   this case and how to structure that decision.  Is there

14   anything else that you believe that the Court needs to be

15   looking at?

16             **MS. FENELON:**  No, your Honor.  We have filed the

17   proposed jury charge.

18             **THE COURT:**  Okay.

19             **MS. FENELON:**  And the only other thing that I guess

20   we can talk about if we're done with the -- once we're done

21   with the charges, as far as the exhibit list, I did talk with

22   Mr. Gallagher prior to our pretrial conference.  However, in

23   light of the fact that he is no longer lead counsel and

24   Mr. Knowlton is representing himself, I don't know where --

25   what are the positions are in regards to any kind of

1   preadmittance of evidence.

2          THE COURT:  Okay.  Then basically, I mean, you're not

3   counsel so, --

4          MR. GALLAGHER:  Right, yeah.

5          MS. FENELON:  Yeah.

6          THE COURT:  -- I mean, basically you have to talk to

7   Mr. Knowlton about whether or not he wants to preadmit exhibits

8   or not.  If you --

9          THE DEFENDANT:  Usually the requirement is they all

10  have to be preadmitted --

11         THE COURT:  No.

12         THE DEFENDANT:  -- or they don't.

13         THE COURT:  No, there's no requirement.  I mean, what

14  happens is if they're not preadmitted, then what the Government

15  and you have to do is basically I call it the old-fashioned

16  way, --

17         THE DEFENDANT:  Agree on it.

18         THE COURT:  -- take a witness, establish your

19  relevancy, and then basically what I call do-wha (phonetic), do

20  you know what it is, what is it, how do you know, does it -- if

21  it's a picture, does it fairly and accurately represent the

22  scene as it existed on such and such, or that's general.  But

23  then with respect to electronic evidence, there are -- there's

24  other protocols that have to be followed to get electronic

25  evidence in.  But I can't advise anybody on that.  You just --

43

1          **THE DEFENDANT:**  Understand, I understand.

2          **THE COURT:**  You just have to --

3          **THE DEFENDANT:**  I don't have any electronic evidence

4    to enter.

5          **THE COURT:**  Okay.

6          **THE DEFENDANT:**  That'll be easy.

7          **THE COURT:**  Okay.  Then I think we're all set.  So

8    I'll see you all back here Monday at 10:30.

9          **MS. FENELON:**  Thank you, your Honor.

10          **MR. GALLAGHER:**  Thank you, your Honor.

11          **THE DEFENDANT:**  Yes, sir.

12          **THE COURT:**  Thank you.  Take care.  You all may be

13    excused.

14          **MS. FENELON:**  Thank you.

15       **(This proceeding was adjourned at 4:50 p.m.)**

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____           January 29, 2020_

TONI HUDSON, TRANSCRIBER