UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  3:18-CR-00024-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Galveston, Texas |
| | ) | |
| JOHN DAVID KNOWLTON, | ) | Monday, December 16, 2019 |
| | ) | |
| Defendant. | ) | (1:42 p.m. to 2:34 p.m.) |


SENTENCING

BEFORE THE HONORABLE GEORGE C. HANKS, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:              ZAHRA J. FENELON, ESQ.
                           U.S. Attorney's Office
                           1000 Louisiana St., Suite 2300
                           Houston, TX 77002

For Defendant:             PHILIP G. GALLAGHER, ESQ.
                           Federal Public Defender's Office
                           440 Louisiana St., Suite 1350
                           Houston, TX 77002

U.S. Probation:            Marissa Gutierrez

Court Recorder [ECRO]:     Ruben Castro

Case Manager:              Susan Gram

Transcriber:               Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    **Galveston, Texas; Monday, December 16, 2019; 1:42 p.m.**

2                        **(Call to order)**

3         **THE COURT:**  Counsel, Mr. Gallagher, and prosecution,

4    if you can please approach and just introduce yourselves to the

5    Court and then state the parties you represent, starting with

6    the Government.

7         **MS. FENELON:**  Good afternoon, your Honor.  Zahra

8    Fenelon for the United States.

9         **THE COURT:**  Okay.

10         **MR. GALLAGHER:**  I'm sorry, Philip Gallagher for

11   Mr. Knowlton, your Honor.

12         **THE COURT:**  Okay.  Mr. Knowlton, welcome, sir.

13         **THE DEFENDANT:**  Yes, sir.

14         **THE COURT:**  I'm sorry, Mr. Knowlton, that you had to

15   wait so long.  This was a very long morning, and I know that

16   you've been back and forth and I apologize for it.

17         **THE DEFENDANT:**  I have no place else to be, sir.

18         **THE COURT:**  Okay, well I apologize, sir.  We're here,

19   Mr. Knowlton, for purposes of your sentencing in the matter

20   that's before the Court.  And before I get started, I need to

21   ask -- well first go through with you and all the counsel

22   present all the things I've reviewed in getting ready for this

23   sentencing.  I've reviewed the indictment, the PSR,

24   Mr. Knowlton, your objections to the PSR.  I've reviewed in

25   detail your sentencing memorandum that Mr. Gallagher prepared

1  on your behalf.  I reviewed the Government's response to your

2  objections, and then the Government's amended response to your

3  objections to the PSR.  And then I've reviewed the addendum to

4  the PSR.  And then the Government filed a supplemental

5  sentencing memorandum in this matter which I received on --

6          **MR. GALLAGHER:**  I think that might be ours, your

7  Honor.

8          **THE COURT:**  Oh, I'm sorry, it was -- sorry, your

9  supplement which I received just recently.  Let me make sure

10 the date.  And then that's the last thing I have in the file.

11 So is there anything else, Mr. Gallagher, that you think that I

12 should have reviewed that I've not received?

13         **MR. GALLAGHER:**  No.  I think this (indisc.) include

14 the addendum, your Honor.  I just want to make -- there were

15 three requests for restitution.  I assume the Court -- and,

16 well, finally, one, I want to make sure the Court has them;

17 two, we've discussed with the Government we're going to ask the

18 Court to defer dealing with those --

19         **THE COURT:**  Okay.

20         **MR. GALLAGHER:**  -- for 60 days as you -- anyway, I do

21 want to make sure the Court has them because you should.

22         **THE COURT:**  Okay, I do -- I did -- I do have them but

23 I know if I guess we're going to consider them this afternoon.

24 I guess not.

25         **MR. GALLAGHER:**  We've agreed if the Court will

4

1    consent to (indisc.) the lawyers who filed those (indisc.)

2    frankly consultation with the defense attorney to see if a

3    resolution could be worked out --

4              THE COURT:  Okay.

5              MR. GALLAGHER:  -- and these were given to me last

6    week and I simply haven't had time to do that, so I was going

7    to request for 60 days --

8              THE COURT:  Okay.

9              MR. GALLAGHER:  -- which the -- as you know, the

10   statute allows, and the Government was unopposed to.

11             THE COURT:  Okay, great, then we'll do that, we'll

12   wait 60 days.

13             MR. GALLAGHER:  Thank you.

14             THE COURT:  Other than those things, is there

15   anything else that you believe I should have reviewed?

16             MR. GALLAGHER:  No, your Honor.

17             THE COURT:  Okay.  Ms. Fenelon, do you have any

18   witnesses or victims present in the courtroom today?

19             MS. FENELON:  No, your Honor, we do not.

20             THE COURT:  And are you expecting an evidentiary

21   hearing?

22             MS. FENELON:  No, your Honor.

23             THE COURT:  Okay.  And, Mr. Gallagher, have you and

24   Mr. Knowlton read and discussed the Presentence Report in this

25   matter?

5

1          **MR. GALLAGHER:**  We have.

2          **THE COURT:**  Okay, and have you discussed the

3   objections?

4          **MR. GALLAGHER:**  Yes, we have.

5          **THE COURT:**  And are you expecting an evidentiary

6   hearing?

7          **MR. GALLAGHER:**  No, your Honor.

8          **THE COURT:**  Okay.  And do you have any witnesses

9   present in the courtroom?

10          **MR. GALLAGHER:**  No, your Honor.

11          **THE COURT:**  Okay.  Before the Court determines the

12   guideline provisions in this case, I need to resolve the

13   objections that have been filed on your behalf, Mr. Knowlton.

14   With respect to the objection to paragraph 24, the objection's

15   overruled.  Respectfully, Mr. Knowlton understands how peer-to-

16   peer networks work and I think that that was an appropriate

17   reference in the PSR.  And I think in the addendum, with

18   respect to Mr. Knowlton's honorable service in the Navy, I

19   think the addendum has been amended to reflect that.

20          **MR. GALLAGHER:**  Correct, it --

21          **THE COURT:**  Okay.

22          **MR. GALLAGHER:**  -- I don't think any -- right.  And

23   you also have his discharge record in my sentencing memorandum

24   (indisc.)

25          **THE COURT:**  Yes, I did.  So with that, are there any

1   other objections that the Court needs to rule on in this matter

2   with respect to the PSR?

3            **MR. GALLAGHER:**  No.  I -- well, I -- just so it's

4   clear, your Honor, I think your -- if you -- with that ruling,

5   I think your ruling on my objection or my request to the two-

6   level reduction at 2G2.2(b)(1), I think --

7            **THE COURT:**  Yeah.

8            **MR. GALLAGHER:**  -- that is implicit in your ruling

9   but I -- just so that's clear.  I'm --

10           **THE COURT:**  Yes.

11           **MR. GALLAGHER:**  I don't wish to concede it but I

12  understand the Court's ruling on that.

13           **THE COURT:**  Definitely.  I -- just to be clear, the

14  request for a decrease pursuant to USSG Section 2G2.2(b)(1) is

15  respectfully denied.

16           **MR. GALLAGHER:**  Thank you.  Then no other guidelines

17  rulings are necessary, your Honor, I believe.

18           **THE COURT:**  Okay.  Having read and resolved the

19  objections to the Presentence Report in this case, the Court

20  finds that the following guideline provisions are applicable to

21  your case, Mr. Knowlton.  The Total Offense Level is 37.  The

22  Criminal History Category is One.  That provides a guideline

23  provision range of 210 to 262 months.  Probation, you're not

24  eligible for.  Supervised release, up to life.  A fine of

25  40,000 to $400,000.  Restitution, undetermined.  And a special

1   assessment of $200.  Based on my ruling on the objections, is

2   this the correct calculation of the guideline provisions in

3   this case?

4           **MR. GALLAGHER:**  Yes, your Honor.

5           **MS. FENELON:**  Yes, your Honor.

6           **THE COURT:**  Ms. Fenelon.  Now, my understanding is

7   the Government has not filed a request for downward departure

8   and the only request for downward departure which referred to

9   the request for downward departure that had been filed

10  regarding the peer-to-peer network issue, that has already been

11  denied.  And the Government doesn't have any request for

12  downward departure under the statute; is that correct?

13          **MS. FENELON:**  That's correct, your Honor.

14          **THE COURT:**  Okay.  So after calculating the

15  guidelines and ruling on the request for departures, and

16  hearing argument, I must now consider the relevant factors set

17  out by Congress at 18 USC, Section 3553(a), and ensure that I

18  impose a sentence that is sufficient but not greater than

19  necessary to comply with the purposes of sentencing.  These

20  purpose include the need for the sentence, reflect the

21  seriousness of the crime, to promote respect for the law, and

22  to provide just punishment for the offense.  The sentence

23  should also deter criminal conduct, protect the public from

24  future crime by the Defendant, and promote rehabilitation.  In

25  addition to the guidelines and policy statements, I must

1    consider the nature and circumstances of the offense, the

2    history and characteristics of the Defendant, the need to avoid

3    unwarranted sentencing disparities among similarly situated

4    defendants, and the types of sentences available.

5    Mr. Gallagher, I have reviewed your sentencing memorandum and

6    recommendations, but at this time do you wish to argue about

7    the application of the factors set forth in Section 3553(a),

8    request a variance, or otherwise make a sentencing

9    recommendation in this matter?

10            **MR. GALLAGHER:**  Yes, your Honor.

11            **THE COURT:**  And you may proceed.

12            **MR. GALLAGHER:**  Thank you.  As you know, I've

13   (indisc.) sentence far below that recommended by the sentencing

14   guidelines in this matter which at the low end is about 17

15   years in custody.  I think there are many reasons for this.

16   First is as I've gone through in the sentencing memorandum,

17   Mr. Knowlton's personal characteristics and history.  He is

18   someone who he's 57 years old now.  This is his first

19   interaction with the criminal law.  He has been very productive

20   in his life.  He served his country honorably for ten years and

21   was honorably discharged.  After that, he's been married for

22   decades and has raised three adult children.  His wife attended

23   the trial.  She's not here now.  Since they lost the house with

24   incarceration and loss of job opportunities, she's moved with

25   her family to New Mexico.  But she -- I spoke with her just

1   last week.  And even after leaving the military, he continued

2   to work and support his family and raise -- be a productive

3   member of his business and the community.  All of that speak

4   very well of him.  I think those both as I said speak well of

5   him and I also show -- think that and in addition to his age

6   show that the risk of recidivism is quite low in this case.

7   And we've also provided a psychological assessment which goes

8   over some of those factors.  Mr. Knowlton is someone who does

9   have a need for counseling both for specifically the sexual

10  conduct in this case but other issues such as depression and

11  self-esteem and kind of social isolation which aggravated the

12  isolated nature of this conduct (indisc.) you know, being in

13  the room alone surfing the web and accessing things they should

14  not access and thereby causing harm to other people by doing

15  that.  And Mr. Knowlton is someone who would be a good

16  candidate for that treatment.  Obviously some of that will come

17  in custody and some of that will come out hopefully should he

18  make it to that.

19           Also, I think the sentence -- a sentence well below

20  the guidelines is in line with what's been imposed in other

21  cases.  We've given you statistics showing that sentences below

22  the guidelines are imposed in over 60 percent of cases under

23  this guideline.  The Government has I think introduced evidence

24  (indisc.) showing I think a sentence of -- for people sentenced

25  to receipt convictions is about -- I think the average sentence

1    is about 120 months, I believe.  But, again, that would be

2    again lower than the guidelines range in most of these cases.

3    Even had Mr. Knowlton pleaded guilty, his guidelines would have

4    been above that.  His guidelines would have been 151 months and

5    up.  So a sentence as low within the guidelines are

6    completely -- or lower than that recommended by the guidelines,

7    they're completely consistent with courts' practices around the

8    country, your Honor.

9          And I think -- and punishment is bound to include

10   incarceration in this case.  That will include important part

11   of both deterrence and rehabilitation.  Someone contemplating

12   this kind of behavior I think believes that they won't get

13   caught.  That's the main thing.  It's not a calculus that if I

14   get caught, I'm going to get a slap on the wrist.  It's the

15   calculus that I am looking on my computer in my room, this is

16   something that's going to escape notice.  A sentence of five

17   years sends a message that the punishment is severe, just as

18   much as a sentence for 17 years sends a message that punishment

19   is severe.  Either sentence is one takes people -- put people

20   in custody for years and years that as in this case, one will

21   certainly result in loss of family, cause a severe hardships to

22   their -- sorry, loss of home causes severe disruption to their

23   family, all of which are punishments which any length of -- any

24   significant length of imprisonment will carry along with it.

25   And also the steps in this case I think show that Mr. Knowlton

1   has grown to appreciate the wrongness of his conduct.  When

2   first confronted by agents, I think Mr. Knowlton didn't quite

3   understand the severity of his conduct.  You can -- when

4   they're initially interviewing him on that morning when they

5   came with a search warrant, agents challenged him by saying,

6   well, what would you think if this had been your grandchild or

7   something depicted in these pictures.  And that's when you can

8   hear Mr. Knowlton beginning to grasp the wrongness of this harm

9   inflicted by this.  He has since had to explain this to his

10  family.  He has just this past week received and read these

11  victim impact statements which are extraordinarily moving and

12  not something someone would have seen beforehand.  And he's

13  written to the Court to express some of his understanding of

14  that.  All those factors I think show that a sentence far below

15  the guidelines in this case are warranted, your Honor.

16  Certainly no risk -- I think any risk to others posed by him is

17  de minimis.  I think the main thing is as the Government has

18  said in this and other cases is that deterrence and to provide

19  some vindication to victims.  But a sentence far less than 17

20  years will serve those purposes of the statute, your Honor.

21       **THE COURT:**  Thank you, Mr. Gallagher.  Ms. Fenelon,

22  do you wish to argue?

23       **MS. FENELON:**  Yes, your Honor, if I may.

24       **THE COURT:**  Yes.

25       **MS. FENELON:**  Your Honor, in regards to being part of

1    the guideline sentence range, it's not just deterrence, it's

2    not just vindication of victims, as counsel stated.  It is to

3    actually assess the correct punishment for the crime or crimes

4    that were done.  We have distribution, receipt, and possession

5    of child pornography, crimes that this Defendant did not take

6    responsibility.  And the Court heard testimony and had to

7    listen to evidence because we did go forth on a bench trial in

8    regards to him having not just one device, not just one time;

9    18 different devices, your Honor, containing child pornography.

10   Eighteen.  A total of 22,144 images.  That's 3,469 images and

11   249 videos of child pornography.  What Defendant stated to law

12   enforcement when they came and talked to him in regards to his

13   child pornography collection was, I was bored, I did it out of

14   curiosity.  Counsel now states that he understands what the

15   severity of his conduct was and it only took until now.  When

16   you are seeing children being raped, at some point as a adult

17   male who as counsel stated has led a productive life, that has

18   served in the military, that has a wife and children and

19   grandchildren, that has worked a job, that has been out in our

20   community, that should be a given.  That should be something

21   that innately you know when you look at it that it is wrong.

22   But that's not what the Defendant stated.  He didn't think that

23   it was wrong because it was so easily accessible.  And not only

24   was it so easily accessible, he made sure that he got to save

25   it.  He took laptops and computers from work to make sure that

13

1    he had enough devices so he could save his collection of child

2    pornography.  He waited until all the individuals at the house,

3    including his grandchildren, were asleep so he could get onto

4    these websites, so he could get onto the places where he could

5    find child pornography.  That is what he did.  The guidelines

6    are there in order to assist in being able to assess a

7    punishment for the severity of these types of crimes of

8    violence.

9            I won't go through all the victim impact statements.

10   I submitted them, parts of them for the Court to read in my

11   sentencing memorandum.  This man that's 57 years old could have

12   been a complete, you know, productive member of society.  But

13   instead, he decided to look at child pornography.  He decided

14   to download it, receive it, and thereby distributing it by

15   being on these peer-to-peer websites, being around those

16   individuals that are likeminded.  It is important to not just

17   deter others.  As we talked about in the last case, it's

18   important to not just deter those other individuals that are

19   looking at this case but also to assess a punishment that is

20   just for the case that we are looking at.  And the images and

21   the videos of those victims that are part of this particular

22   case and what this Defendant did and what -- and those every

23   day times as I stated before that those victims have to deal

24   with looking and being in their normal capacity walking by and

25   seeing others and not knowing whether or not they've seen

1    images and videos of them being raped.  This wasn't a lapse in

2    judgment.  This was an entire collection of what he wants, what

3    his interest is.  And he didn't take responsibility.  And

4    that's his right to not do so.  It is his right to go to trial.

5    It is his right to put the Government to its burden.  But he's

6    now saying to the Court, give me the mandatory minimum, even

7    though I have 22,144 images.  We can talk about statistics all

8    day long, your Honor, but the Court is not tasked with applying

9    statistical analysis.  That's not what we look to.  That's why

10   we have specific sentencing hearings, that's why this Court

11   asks defense and the Government, do you have any argument in

12   particular to this case; because that's what's important.  We

13   do look at deterrence, we do look at vindication for the

14   victims.  But we also look at the actions of the individual

15   that committed the crime.  And the actions of this individual

16   with 18 devices and more than 20,000 images reflects a

17   situation in which a guideline sentence is the only applicable

18   sentence that should be there.  And we ask for 262 months, the

19   top of the guideline sentence, because that is what is just in

20   this case.  Thank you, your Honor.

21        **THE COURT:**  Thank you, Ms. Fenelon.  Mr. Knowlton,

22   you have a right to make a statement or present any information

23   you wish to mitigate that sentence.  I have reviewed the letter

24   that you read -- that you wrote and I read it very, very

25   carefully, but is there anything else that you'd like to add in

1  this matter?  Because I'd like to hear from you if you would.

2          **THE DEFENDANT:**  Yes, sir.  First I'd like to

3  apologize to the Court and to the victims.  I'm sorry that my

4  actions have caused wounds and that I'd hoped that should have

5  been healed from the victims and everything like that.  It was

6  not my intention to harm anyone, and for that I am sorry and I

7  ask for forgiveness.  My life and my family's life is forever

8  changed.  There is nothing that can be done about that.  That

9  is my fault.  I put my family through this.  All I can do is

10  hopefully move forward and try to rebuild some sort of a life

11  and future.  But it won't be the way my wife and I had planned

12  years -- 37 years ago of what we would do, what we talked about

13  when we first married.  It really doesn't seem that long ago

14  but there, you know, it has been 37 years that I've been

15  married to her.  For all the loss and the hurt that I've caused

16  my family, if my death would alleviate any of their pain and

17  suffering, I would gladly give my life for that, just like I

18  would for my grandchildren or my kids even.  That's all that

19  really matters to me.  Any kind of sentence like that is

20  completely kind of ridiculous.  That's a death penalty.

21  Anything over five or six years is a death penalty.  Really?  I

22  mean, I'm sorry, Judge, that's just -- that's cruel.  I would

23  like to ensure the Court that this lapse of my character will

24  never be repeated again.  I only have a few more years of

25  gainful employment left before my age and my health stop me

1    from working in my trained profession.  So I ask the Court for

2    mercy and compassion so that I can try to repair and fulfill

3    some of the promises that I have made to my wife before my time

4    is up on this world.  And that is it, sir.

5             THE COURT:  Thank you, Mr. Knowlton.  Counsel, I know

6    it's been a long morning and afternoon.  I'm just going to take

7    just another brief recess and then we'll get started up in just

8    a second.

9             MR. GALLAGHER:  Yes, your Honor.

10            THE COURT:  Okay.

11            MS. FENELON:  Thank you, your Honor.

12            THE CLERK:  All rise.

13       (Recess taken from 2:04 p.m. to 2:21 p.m.)

14            THE CLERK:  All rise.

15            THE COURT:  Please be seated, everyone.  The parties

16   in the last hearing can please approach.  Mr. Knowlton, I've

17   looked at everything that's been presented to me very, very

18   carefully.  And I do believe that you're sincere in your --

19   that you are in your apology.  I know that this has cost you

20   your family and your career possibly at this point.  I

21   understand that.  As you heard me mention earlier, I have two

22   concerns that I need to be focused on here:  one is not just

23   doing what's right for you but also for the victims, and also

24   to send a message regarding the severity of this offense that

25   you committed.  The number of images that you had, the storage,

1    the way that you kept them all, that's a very serious offense.

2    It wasn't just a one-time mistake that you didn't know better.

3    And I have a responsibility to the victims.  I mean, this is

4    not a victimless crime.  You understand that I'm sure after

5    having read those victim impact statements.  And as a judge,

6    I'm the only one that can speak for those victims and I'm the

7    only one that can give them justice with respect to what

8    they've suffered and to make sure that no one else is tempted

9    to do what you did with respect to these images and collecting

10   these images.

11          With that said, I am going to -- in light of your

12   military service, I am going to vary downward in the guideline

13   range in this case because I agree with Mr. Gallagher, that the

14   minimum guidelines in this case exceed what is necessary for

15   purposes of deterrence and for respect for the rights of the

16   victims in this case.  So I'm going to depart -- I'm going to

17   vary downward in your sentence from the guideline provisions in

18   this matter.

19          Mr. Knowlton, pursuant to the Sentencing Reform Act

20   of 1984, it is the judgment of this Court that the Defendant,

21   John David Knowlton, is hereby committed to the custody of the

22   Bureau of Prisons to be imprisoned for a term of 144 months as

23   to Count One and to 120 months as to Count Two, all to be

24   served concurrently for a total of 144 months.  Upon release

25   from imprisonment, you should be placed on supervised release

1   for a term of 15 years.  The term consists of 15 years as to

2   each of Counts One and Two to run concurrently.

3           Within 72 hours of release from the custody of the

4   Bureau of Prisons, you shall report in person to the probation

5   office in the district to which the Defendant is released.

6   While on supervised release, you shall not commit another

7   Federal, State, or local crime.  And you shall comply with the

8   standard conditions that have been adopted by this Court under

9   General Order Number H-2017-1, abide by any mandatory

10  conditions required by law, and to comply with the following

11  additional conditions.  You shall comply with the requirements

12  of the Sex Offender Registration and Notification Act as

13  directed by the probation officer, the Bureau of Prisons, or

14  any sex offender registration agency in which you reside, work,

15  or a student or convicted of a qualifying offense.  You must

16  participate in a sex offense-specific treatment program and

17  follow the rules and regulations of that program.  The

18  probation officer will supervise your participation in the

19  program and you must pay the cost of that program if you're

20  financially able to do so.  You must not view or possess any

21  visual depiction, including any photograph, film, picture, or

22  computer-generated image or picture, whether or not produced by

23  electronic, mechanical, or other means of sexually explicit

24  conduct as defined by law.  You must not possess and/or use

25  computers or other electronic communications or data storage

1   devices or media without the prior approval of the probation

2   officer.  If approved, you shall consent to the ongoing

3   monitoring of all devices.  To ensure compliance with the

4   computer monitoring, you must allow the probation officer to

5   conduct initial and periodic unannounced searches of any

6   computers subject to computer monitoring.  These searches shall

7   be conducted for purposes of determining whether the computer

8   contains any prohibited data prior to the installation of the

9   monitoring software to determine whether the monitoring

10  software is functioning effectively after its installation and

11  to determine whether or not there have been attempts to

12  circumvent the monitoring software after its installation.  You

13  must warn other people who use these computers that the

14  computers may be subject to searches pursuant to this

15  condition.  You agree to pay the cost of the hardware and/or

16  software monitoring system, including any ongoing monthly

17  service cost in accordance with your ability to pay as

18  determined by the probation officer.  You must participate in a

19  mental health treatment program and follow the rules and

20  regulations of that program.  The probation officer in

21  consultation with the treatment provider will supervise your

22  participation in the program, including the provider, location,

23  modality, duration, and intensity, and you must pay the cost of

24  that program if you're financially able to do so.  At this

25  time, are you -- is the Government claiming or seeking

1    restitution?

2          **MS. FENELON:**  Yes, your Honor, we are.  And as stated

3    earlier, we ask that we have time, at least 60 days, in order

4    for us to convene and talk about the restitution if counsel

5    wants to speak to the attorneys for the victims themselves as

6    well to see if there can be a negotiation that -- an agreement

7    that we can meet.

8          **THE COURT:**  Okay.  And pursuant, Mr. Knowlton, to 18

9    USC, Section 3664(d)(5), if a victim's losses are not

10   ascertainable by the date that is ten days prior to sentencing,

11   the attorney for the Government or the probation officer shall

12   inform the Court and the Court shall set a date for a final

13   determination of the victim's losses, not to exceed 90 days

14   after sentencing.  Such order may be granted only upon a

15   showing of good cause for the failure to include such losses in

16   the initial claim for restitution and/or relief.  It is further

17   ordered that Defendant shall pay the United States a special

18   assessment of $200.  And the Court finds that you do not have

19   the ability to pay a fine and the Court will waive a fine in

20   this case.

21          The Court finds that you are indigent and the JBTA

22   assessment is waived.  Having assessed the ability to pay,

23   payment of the total criminal monetary penalties shall be due

24   as follows:  the Defendant shall make a payment of $200,

25   payable immediately.  Payment is to be made through the United

1   States District Clerk, Southern District of Texas.  Payment of

2   criminal monetary penalties shall be due during the period of

3   imprisonment.

4          And just to make the record clear also, Mr. Knowlton,

5   it's your military service and your age in this matter I'm -- I

6   consider as factors warranting a downward variance in the

7   minimum in this case.  So that's why I am -- one second.  For

8   the record, that's why I am departing below the guideline

9   provisions in this case of 210 months and I'm assessing 144

10  months for those two, primarily those two reasons.

11         Mr. Knowlton, you have the right to appeal my

12  sentence.  I am going to give you a written notice of your

13  rights to appeal.  If you could just look at those and make

14  sure that you understand what your rights are.  If you do

15  understand those rights, then if you could just sign this

16  document and then I'll enter it into the record.

17         **THE DEFENDANT:**  Yes, sir.

18      **(Defendant/counsel confer)**

19         **MR. GALLAGHER:**  (Indisc.)

20         **THE COURT:**  Okay, yes.  The record will reflect that

21  you have signed the notice of your rights to appeal.

22         As a housekeeping matter, Ms. Fenelon, I received the

23  exhibit list from the trial.  Was that to be filed in the

24  record of this matter or --

25         **MS. FENELON:**  Is that -- we didn't file anything

1    recently, your Honor, so that would have probably been during

2    the time of the trial.  I think --

3            **THE COURT:**  Okay.

4            **MS. FENELON:**  -- we had the evidence was we took the

5    evidence back because they were large devices.  I think maybe

6    that's the list of the things that --

7            **THE COURT:**  Okay.

8            **MS. FENELON:**  -- we have in our possession.

9            **THE COURT:**  Okay.

10           **MS. FENELON:**  We will go ahead and file it if it

11   hasn't --

12           **THE COURT:**  Can you go ahead and just file it --

13           **MS. FENELON:**  Absolutely.

14           **THE COURT:**  -- for purposes if there's an appeal in

15   this matter so that --

16           **MS. FENELON:**  Certainly, your Honor.

17           **THE COURT:**  -- this was --

18           **MS. FENELON:**  We apologize that there wasn't one that

19   was --

20           **THE COURT:**  Oh, no problem.

21           **MS. FENELON:**  -- put into the record.  And, your

22   Honor, as also a housekeeping matter, this is a final order of

23   forfeiture.

24           **THE COURT:**  Okay.

25           **MR. GALLAGHER:**  There's no opposition to that.

23

1          **THE COURT:**  Okay.

2          **MS. FENELON:**  Thank you.

3        **(Pause)**

4          **THE COURT:**  And let the record reflect that has been

5   signed.

6          Mr. Knowlton, I know that this has been a very

7   difficult day for you, a very difficult process.  I know that

8   you've lost your livelihood and your family over the choices

9   you've made.  But in light of your service and your age, I did

10  not sentence you to the minimums in this matter because I think

11  that you deserve the opportunity to -- after you've served your

12  sentence, you deserve the opportunity to try to move forward

13  with your life as best you can and make different choices in

14  the future.  I know it's going to be very difficult.  I

15  understand that your wife has moved to New Mexico.  I will make

16  a recommendation as you heard in the last case that you be

17  housed in a facility closest to your family so if you could --

18  so that they can help support you through the difficult times

19  ahead.  Please don't push them away because you're going to

20  need them.  I read your letter very carefully and I do believe

21  that you understand now the gravity of what you did and that

22  you are contrite and humble about what you did but

23  unfortunately, that doesn't change the impact of what you did

24  and how it's affected others.  And as you heard me mention

25  earlier, I've got a responsibility to the victims who were

1    harmed by this crime that you committed because it was not a

2    victimless crime.  And I also have a responsibility to the

3    community to make sure that others don't follow in your

4    footsteps and to justly punish the crime that you committed

5    under the facts of this particular case.  So that's why I'm

6    entering the sentence that I'm entering into.

7          Your life has to take -- you have to take a different

8    journey now.  It's different from the journey that you had

9    anticipated but it can go forward.  But whether or not it goes

10   forward is up to you.  And I encourage you, while you're

11   serving your sentence, to seek the skills that you need so that

12   when you are released, that you can go on with your life and

13   your career.  It may be different.  It probably will be

14   different from what you're doing now but you will be able to

15   proceed with your life.

16         Good luck to you, Mr. Knowlton.

17         **MR. GALLAGHER:**  Your Honor, just to be specific in

18   the recommendation, we'd request if possible that he be placed

19   in either Bastrop or Seagoville which I believe in closest

20   facilities to his grown children which have the sex offender --

21   the BOP sex offender treatment.

22         **THE COURT:**  I'll make that recommendation.

23         **MR. GALLAGHER:**  Thank you, your Honor.

24         **THE COURT:**  Is there anything further from either

25   side?

1          **MR. GALLAGHER:**  No, your Honor.

2          **MS. FENELON:**  Nothing further, your Honor.

3          **THE COURT:**  Okay.  Mr. Knowlton, good luck to you,

4  sir.

5          **THE DEFENDANT:**  Yes, sir.

6          **MS. FENELON:**  And we'll have this filed by today,

7  your Honor.

8          **THE COURT:**  That will be great.  Thank you.

9          **MS. FENELON:**  And I think that's all I have.  And may

10  I be excused?

11          **THE COURT:**  You may be excused.  Thank you for -- I

12  know it's been a long morning, Ms. Fenelon.  Mr. Gallagher,

13  thank you all.

14          **MR. GALLAGHER:**  Thank you, your Honor.

15          **(This proceeding was adjourned at 2:34 p.m.)**

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    _January 29, 2020_


                    TONI HUDSON, TRANSCRIBER